## ALLIED VAN LINES INTERNATIONAL CORP., Plaintiff,

v.

## CENTENNIAL INSURANCE COMPANY and Highlands Insurance Company, Defendants.

No. 86 Civ. 4129 (KTD).

United States District Court, S.D. New York.

March 18, 1988.
As Amended Aug. 17, 1988.

Dougherty, Ryan, Mahoney, Pellegrino, Giuffra & Zambito, New York City, for plaintiff; Richard E. Juzumas, of counsel.

Bigham Englar Jones & Houston, New York City, for defendants Centennial Ins. Co.; Donald F. Connors, Helen M. Benzie, of counsel.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge:

This matter is before the court on cross-motions for summary judgment. The parties have stipulated to the facts underlying the action.

### FACTS

This action involves an insurance policy issued by the defendant, Centennial Insurance Company ("Centennial"), covering goods transported by the plaintiff, Allied Van Lines International Corporation ("Allied"), from Texas to Iran for William Clem, the owner of the goods. The goods arrived in Iran at the height of the revolution which brought the Ayatolla Khomeini to power. Upon arrival in Iran, the goods were lost in the "revolutionary shuffle." Eventually the goods were discovered in Bandar Khomeini. Allied was advised by its agent in Iran that the shipment had been confiscated by the Iranian government. On June 4, 1980, however, Allied's agent "advised Allied that the Clem shipment could move from Bandar Khomeini if it could be proven to the Revolutionary Court and nationalized Star Line that the [goods] did not belong to the American Embassy staff and that Mr. Clem was not

part of the Embassy staff at Teheran." Joint Appendix and Rule 3(g) Statement, ¶ 31. The necessary letters were procured and forwarded to Allied's agent. On September 17, 1980, the agent advised Allied that the Clem shipment could not be located. No one connected with this lawsuit knows what happened to the goods.

Clem eventually sued Allied for $50,000 pursuant to the bill of lading. Allied, in turn, looked to Centennial for the defense of the action and any damages that might have to be paid. Centennial declined liability for Clem's claim and declined to defend Allied. Allied defended the Clem case and eventually settled by paying Clem $50,000. Allied also incurred a substantial amount, about $20,000, in attorneys' fees in that matter.

Allied now seeks to recover both the $50,000 it paid and the attorneys' fees it expended in connection with the Clem case. Allied argues that it is entitled to both under the all-risk policy issued by Centennial in connection with the shipment.

In response, Centennial claims that the loss incurred by Allied falls within certain policy exclusions which provide that losses caused, *inter alia*, by seizure, arrest, detainment, nationalization, civil war, rebellion, or strife, labor disturbances or civil commotions are not covered by the policy. Centennial argues that the goods were lost for insurance purposes either when they first arrived in Iran and fell under the dominion and control of the Iranian customs officials, *or* sometime before June 4, 1980 when Iran agreed to release the goods upon proof that they were not owned by the American Embassy or an Embassy official. Accordingly, Centennial argues that the loss is excluded from the policy. Allied argues that the goods were not lost, for insurance purposes, until September 17, 1980, when its agent in Iran informed it that the goods could not be located, and that therefore the policy exclusions do not apply to the Clem shipment.

### DISCUSSION

Centennial insured the goods carried by Allied:

To pay for physical loss or damage from any external cause irrespective of per-

centage (but excluding those risks excepted by "F.C. & S and S.R. & C.C." Warrantees, unless otherwise provided herein).

Joint Appendix and Rule 3(g) Statement, Exh. 1, ¶ 6.

Certain risks are excluded from coverage by the policy:

The following Warranties shall be paramount and shall not be modified or superseded by any other provision included herein or stamped or endorsed hereon unless such other provision refers specifically to the risks excluded by these Warranties and expressly assumes the said risks:—

A. Notwithstanding anything herein contained to the contrary, this insurance is warranted free from capture, seizure, arrest, restraint, detainment, confiscation, preemption, requisition or nationalization, and the consequences thereof or any attempt thereat, whether in time of peace or war and whether lawful or otherwise; ....

Further warranted free from the consequences of civil war, revolution, rebellion, insurrection, or civil strife arising therefrom, or piracy.

B. Warranted free of loss or damage caused by or resulting from strikes, lockouts, labor disturbances, riots, civil commotions or the acts of any person or persons taking part in any such occurrence or disorder.

Joint Appendix and Rule 3(g) Statement, Exh. 1, ¶ 26. Such an insurance policy is an "all-risk" policy. *Atlantic Lines Ltd. v. American Motorists Ins. Co.*, 547 F.2d 11, 12 (2d Cir.1976).

██ In order to recover under an all-risk policy, Allied must prove only the existence of the policy and a fortuitous loss of the covered property. *Ingersoll Milling Machine Company v. M/V Bodena*, 829 F.2d 293, 307 (2d Cir.1987); *Atlantic*, 547 F.2d at 12; *Pan American World Air., Inc. v. Aetna Casualty & Surety Co.*, 505 F.2d 989, 999 (2d Cir.1974). Allied has no burden to prove the cause of the loss, *Holiday v. Aetna Ins. Co.*, 571 F.Supp. 1460, 1463 (S.D.N.Y.1983), and all-risk coverage

extends to unexplained losses. *Atlantic*, 547 F.2d at 13. In order to avoid liability, the burden then switches to Centennial to prove that the only reasonable interpretation of the facts leads to the conclusion that the loss fell within a policy exclusion. *Pan American*, 505 F.2d at 999–1000.

Clem's goods were not lost, for insurance purposes, when they first arrived in Iran and fell under the dominion and control of the Iranian customs officials. The goods arrived in Khorramshar in December 1978, where customs strikes prevented their movement to their ultimate destination. Joint Appendix and Rule 3(g) Statement, ¶¶ 8–9. The goods remained in Khorramshar, awaiting shipment to Dubai until November 1979. *Id.*, ¶¶ 15, 20, 23, 24. The goods were then transported to Bandar Khomeini, arriving on November 6, 1979, *id.*, ¶ 24, and remaining there until at least June 4, 1980. *Id.*, ¶ 31. It is only in September 1980 that it is discovered that the goods were inexplicably lost. *Id.*, ¶ 33.

Although the goods were detained by the customs strike, they were not lost; their location was ascertainable, and nobody other than Clem claimed ownership of or any right to possess the goods.

The goods in question *were* lost without explanation in September 1980. All-risk coverage protects unexplained losses, and Centennial does not establish that the only reasonable interpretation of the facts leads to the conclusion that the inexplicable loss fell within a policy exclusion. Therefore, the policy exclusions do not apply to the Clem shipment, and the Centennial policy covers the unexplained loss of the goods. Accordingly, Centennial is liable not only for the $50,000 amount of the policy, but also for the counsel fees expended by Allied in defense of the Clem action.

Allied's motion for summary judgment must be granted, and Centennial's motion for summary judgment must be denied.

SO ORDERED.