**MONTEFIORE MEDICAL CENTER, Plaintiff,**

v.

**AMERICAN PROTECTION INSURANCE COMPANY, Defendant.**

**No. 00 CIV.3235 LTS MHD.**

United States District Court, S.D. New York.

Sept. 27, 2002.

Weg and Myers, P.C., By William H. Parash, New York City, for Plaintiff.

Budd Larner Gross Rosenbaum, Greenberg & Sade, P.C., Short Hills, NJ by Norman G. Sade, Michael D. Hynes, for Defendant.

## OPINION AND ORDER

SWAIN, District Judge.

Plaintiff Montefiore Medical Center ("Plaintiff") brings this action seeking re-

covery under a first-party property insurance policy for the costs of stabilizing and repairing faulty construction of the brick facade of an apartment building located at 3450 Wayne Avenue in the Bronx, New York (the "Building"). The Building was insured by Defendant American Protection Insurance Co. ("Defendant") under Policy No. 3ZG007942–00 (the "Policy"), which was in effect from November 1, 1997 to November 1, 1998. Plaintiff is the owner of the Building.

Before the Court are Defendant's motion for summary judgment and Plaintiff's cross-motion for partial summary judgment. Defendant also has moved to strike certain affidavits submitted by Plaintiff in support of its motion for summary judgment.

The Court has considered thoroughly all of the submissions related to these motions. For the reasons set forth below, Defendant's motion to strike Joseph Gasperino Jr.'s Affidavit ("Gasperino Affidavit") and Serge Roux's Affidavit ("Roux Affidavit") is denied. Defendant's motion for partial summary judgment and Plaintiff's cross-motion for partial summary judgment are denied.

## BACKGROUND

The following factual recitation is based on the parties' statements of material facts pursuant to Local Rule 56.1 and affidavits submitted in support of the motions for summary judgment. The facts outlined below are undisputed except as otherwise noted.

Defendant issued a policy of insurance for the period November 1, 1997 to November 1, 1998, under which it insured Plaintiff's building against all risk of loss, subject to certain exclusions. Pl.'s Stmt. in Supp. of Cross–Mot. ¶ 1. On November 2, 1998, Plaintiff's insurance group, the United Jewish Appeal–Federation of Jewish Philanthropies ("UJA"), gave Defen-dant written notice of the loss that is the subject of this action. *Id.* ¶ 3.

On May 21, 1998, Peter Corsell Associates ("PCA"), Plaintiff's designated engineering expert in this case, had provided Plaintiff with a proposal to, among other things, inspect the building's facade and "[i]nvestigate and evaluate to repair the various elements of the facade." PCA Proposal, dated May 21, 1998, at B, Ex. 3 to Sade Aff. ("Proposal"). On or about July 1998, the New York City Housing Authority Development Corporation inspected the Building and issued a report concluding that the Building needed maintenance and noting that major physical improvements were planned in connection with "Local Law 10 work." Physical Inspection Report, Ex. 12 to Sade Aff.

On July 8, 1998, Serge Roux, Senior Associate of PCA, provided Plaintiff with a preliminary report stating that: "blisters, fishmouths were observed at many locations of the roof;" "[t]he parapets were found to be in poor condition[;]" "[l]oose and spalled bricks were observed at many locations of both the inboard and outboard faces of the parapets;" "[t]he parapet wall was found to be leaning at one location at the east elevation;" and that PCA's "investigation of the exterior wall [was] still in progress" but that "[m]asonry cracks, loose bricks and corroded shelf angles were observed at many locations of the exterior walls." PCA Preliminary Building Facade Investigation, 1–2 at F, Ex. 3 to Sade Aff. Roux concluded the preliminary report by opining that these conditions were hazardous and recommending that a shed be constructed along the elevations immediately. *Id.* In a letter drafted for Plaintiff's public adjuster, PCA summarized the results of its investigation, commenting on the following areas: "[m]issing, damaged (snapped) and inadequate wall ties;" "[m]issing or improperly install-

ed soft (relieving) joints;" and "[i]nadequate flashing designed and installation." Letter to John Panico dated March 9, 1999, II.B., Ex. 5 to Sade Aff. ("Roux Letter, dated March 9, 1999"). PCA concluded that "the lack of soft joints and inadequate flashing are the primary causes of the observed wall failure .... These conditions are still active and must be repaired to avoid the further collapse of the wall." *Id.*

In a letter dated March 30, 2000, Defendant provided its coverage analysis determination to Plaintiff. Letter to Susan Cannavo dated March 30, 2000, Ex. 13 to Sade Aff. Defendant advised Plaintiff that it was denying the claim because it found no liability under the Policy and because Plaintiff had failed to give timely notice to Defendant. *Id.*

The challenged Roux affidavit, dated May 10, 2001, concludes that water infiltration, movement and vibrations of the facade, snapping of the wall ties, scaling rust, displaced shelf angles, thermal pressure on the masonry and other events were the efficient causes of the collapse of the facade. Roux Aff. ¶¶ 6, 12. Roux asserts that there were no standards, codes, or ordinances requiring the use of soft joints in the construction of buildings at the time when 3450 Wayne Avenue was built. Roux Aff. ¶ 9.

## DISCUSSION

### Motion to Strike Affidavits

Defendant has moved to strike the affidavits of Serge Roux and Joseph A. Gasperino, Jr., which were submitted by Plaintiff in response to Defendant's motion for summary judgment and in support of Plaintiff's cross-motion for partial summary judgment. Defendant asserts that the Roux and Gasperino affidavits were submitted in violation of Rules 26(a)(2)(B), 26(e)(1), 37(c)(1) and 56(e-f) of the Federal Rules of Civil Procedure.

Federal Rule of Civil Procedure 26(a)(2)(B) requires an expert witness' report to:

[C]ontain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; ....

Fed.R.Civ.P. 26(a)(2)(B). Rule 26(e)(1) requires that a party supplement any expert report, materials or testimony if the party learns that the information previously disclosed under Rule 26 "is incomplete or incorrect and if the additional or corrective information has not otherwise been made known." Fed.R.Civ.P. 26(e)(1). Rule 37(c)(1) provides that:

A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), ... is not, unless such failure is harmless, permitted to use as evidence at trial, at a hearing, or on a motion any witness or information not disclosed.

Fed.R.Civ.P. 37(c)(1). In connection with summary judgment motions, Rule 56(e) provides that:

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.

Fed.R.Civ.P. 56. "A hearsay affidavit is not a substitute for the personal knowledge of a party." *Bruchman v. Standard Chartered Bank,* 997 F.Supp. 481, 487 (S.D.N.Y.1998). According to the Federal Rules of Evidence, however, "facts or data need not be admissible in evidence in order for... [an expert] opinion or inference to be admitted." Fed.R.Evid. 703. An expert's opinion may permissibly be based

on facts "perceived by or made known to the expert at or before the hearing." *Id.*

### Gasperino's Affidavit

Defendant asserts that Gasperino's affidavit should be rejected because Plaintiff failed to name Gasperino as an expert, produce his resume or report, qualify him as an expert in any way, or disclose his identity or field of expertise in its Rule 26(a)(2) expert witnesses disclosures. Discovery in this action was initially required to be completed by February 28, 2001. The discovery deadline in the Court's initial scheduling order was extended on two occasions at the request of Defendant and with the consent of Plaintiff. The discovery deadline was later extended to May 2, 2001, at the request of Plaintiff and with the consent of Defendant. Defendant served and filed its motion for summary judgment prior to the May 2, 2001 discovery deadline. At that time, Defendant also sought a stay of all discovery pending the decision of the Court on the motion. The Court granted Defendant's stay application, extending the discovery period until thirty days after the decision on the motion.

Rule 26 specifically allows a party to supplement its disclosures during the course of discovery. Because discovery was still open pursuant to the Court's endorsement at the time of Defendant's motion, and indeed remains open, Plaintiff's additional submissions in the form of Gasperino's affidavits will not be stricken on the basis that Plaintiff did not timely identify Gasperino as an expert during premotion discovery. Thus, prior failure to provide expert disclosure on Gasperino prior to the filing of his affidavit in connection with the motion practice does not constitute an appropriate basis for excluding the affidavit.

### Roux's Affidavit

On March 19, 2001, Defendant identified Roux as an expert in this action and submitted expert reports in connection with this disclosure. *See* Parash Aff. ¶ 3. Defendant also provided Defendant with a letter written by Roux on March 9, 1999 to John Panico. *See* Roux Latter, dated March 9, 1999. Defendant asserts that Roux's affidavit contradicts his expert reports and prior testimony, contending that Roux's statement that the "movement and shifting of the building's exterior walls were the direct result of water infiltration," Roux Aff. ¶ 6, and contradicts prior statements in reports in which Roux used phrases like "principal cause" and "primary cause" in linking the wall failure to the facade's lack of soft joints and the inadequate design and installation of the flashing. *See* Roux Letter, dated March 9, 1999. While "a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony," here, the affidavit and the reports previously proffered "are only arguably contradictory." *Hayes v. New York City Department of Corrections*, 84 F.3d 614, 619–20 (2d Cir.1996). A review of the Roux Affidavit reveals that the context of phrases such as "principal cause" and "primary cause," which were used in earlier documents prepared by Roux, can be construed to refer to an historical analysis of the problem rather than to proximate cause which, as discussed below (*see infra* pp. 14–16), is used to assess risk allocation in insurance policy matters. Therefore, Roux's statements do not necessarily contradict each other.

Defendant further complains that Roux's statements as to the adequacy of the building's design (Roux Aff. ¶ 10) are based on hearsay information from unidentified

sources. In his affidavit, Roux states that "after reviewing the testimony submitted by George Marschhausen [ (Defendant's expert) ] and discussing this matter further with other engineers, from the perspective of the masonry construction customs and practice at the time 3450 Wayne Avenue was built, I am able to say that the design of this building was not defective according to those standards." Roux Aff. ¶ 10. Defendant notes that Federal Rule of Civil Procedure 56(e) requires affidavits to be based on "specific facts based on first-hand knowledge." *Wahad v. Federal Bureau of Investigation, et al.*, 179 F.R.D. 429, 435 (S.D.N.Y.1998).

█ While Roux's submission refers in its conclusion to unidentified individuals, Roux's conclusions, as set out in his affidavits, do not appear to be based solely on these grounds but rely on his personal first-hand knowledge and other reviewed sources of information. Moreover, Federal Rule of Evidence 703 allows experts to express their opinions based on facts that are not within their personal knowledge. *See* Fed.R.Evid. 703 (expert's testimony must be based on information "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject"). In ruling out "faulty workmanship" or "design" as the proximate cause of the collapse Roux identifies his sources of information, including the testimony of Defendant's expert, George Marschhausen, as well as "built drawings" and "Local Law 10 reports" which were produced to Defendants. Roux's testimony is within the bounds of his claimed expertise and such sources of information appear to be of the type reasonably relied upon by experts in his field. Thus, the Roux affidavit is not inadmissible on hearsay grounds.

Defendant further asserts that Roux's affidavit should be stricken because the conclusions drawn in Roux's affidavit are based upon information that was never provided to Defendant or referenced in prior reports or testimony. Specifically, Defendant notes that Roux refers to an "historical timeline" that, Defendant asserts, was never disclosed pursuant to Rule 26(a)(2). *See* Roux Aff. ¶ 8. According to Rule 37(c), "[a] party that without substantial justification fails to disclose information required by Rule 26(a) . . . shall not, unless such failure is harmless, be permitted to use as evidence at trial . . . any witness or information not so disclosed." Fed.R.Civ.P. 37(c)(1). In his affidavit, Roux states that "[i]n order to put all of [his] findings into a coherent context, [he] decided to present a historical timeline in order for everyone to understand what was in existence at the time that the water entered the premises and the ties snapped." Roux Aff. ¶ 8.

As previously noted, the discovery deadline in this case is still open. Thus, Plaintiff can supplement its disclosures by producing the historical timeline during the remaining course of discovery. *See* Fed. R.Civ.P. 26(e). Moreover, precluding evidence "that was not disclosed in discovery is a drastic remedy and will apply only in situations where the failure to disclose represents a flagrant bad faith and callous disregard for the rules," *Johnson Electric North America, Inc. v. Mabuchi Motor America Corp.*, 77 F.Supp.2d. 446, 458 (S.D.N.Y.1999); *McNerney v. Archer Daniels Midland Co.*, 164 F.R.D. 584, 587 (W.D.N.Y.1995), and is a matter within the trial court's discretion, *Johnson Electric North America, Inc.*, 77 F.Supp.2d at 458; *Ventra v. United States*, 121 F.Supp.2d 326, 332 (S.D.N.Y.2000). There is no evidence of bad faith on Plaintiff's part in failing to produce the timeline.

For the reasons set forth above, Defendant's motion to strike Roux's affidavit is denied.

*Motions for Summary Judgment*

Defendant seeks summary judgment, contending that the Policy does not afford coverage to Plaintiff because Plaintiff's claimed loss was the result of defects in the original workmanship, materials, construction and design of the Building's brick facade, therefore falling under a "faulty ... construction" exclusion provision of the Policy. Plaintiff asserts that water infiltration was the proximate cause and that the claimed loss therefore is not excluded. Plaintiff further contends that, even if faulty construction is found, an "ensuing loss" exception to the exclusion applies. Defendant maintains that Plaintiff's property suffered no ensuing loss, and also argues that Plaintiff's claim is barred by its failure to provide Defendant with timely notice of loss.

Plaintiff cross-moves for summary judgment dismissing Defendant's Second, Third, Fourth, Fifth, Seventh and Ninth Affirmative Defenses. Defendant's Second Affirmative Defense asserts that, "[t]o the extent the alleged damage to the building ... was caused by or resulted from faulty workmanship, material, construction or design, there is no coverage under the Policy." Answer at 3. The Third Affirmative Defense asserts that, "[t]o the extent that the alleged damage to the Building was caused by or resulted from inherent vice, deterioration and wear and tear, there is no coverage under the Policy." Answer at 3–4. The Fourth Affirmative Defense alleges that "[t]o the extent that the alleged damage to the Building was caused by or resulted from bulging, cracking, shrinkage, expansion and gradual settling of pavements, foundations, walls, floors, roofs, ceilings and other property, there is no coverage under the Policy." Answer at 4–5. The Fifth Affirmative Defense alleges that "[t]he loss alleged by plaintiff was not fortuitous because plaintiff was aware of and in control of the conditions giving rise

to the loss for a substantial period of time before the alleged loss or damage occurred." Answer at 5. Defendant's Seventh Affirmative Defense asserts that "Plaintiff's action is barred because Plaintiff has failed to comply with all the requirements of the Policy." Answer at 5. The Ninth Affirmative Defense asserts that "Plaintiff's action is barred by its failure to commence this action within twenty-four months after inception of the alleged loss." Answer at 6. For the reasons explained below, both motions are denied, as material issues of disputed fact preclude summary judgment in favor of either party.

Summary judgment shall be granted in favor of a moving party where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of establishing the absence of any genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When considering a motion for summary judgment, the Court does not engage in fact-finding or weighing of credibility, but determines whether any material questions of fact are in dispute after resolving all ambiguities and drawing all justifiable inferences in favor of the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Anderson*, 477 U.S. at 250, 106 S.Ct. 2505; *Carlton v. Mystic Transportation Inc.*, 202 F.3d 129, 133 (2d Cir.2000). Conclusory allegations, conjecture and speculation will not, however, create a genuine issue of fact. *Kerzer v. Kingly Manufacturing*, 156 F.3d 396, 400 (2d Cir. 1998). A genuine issue of material fact exists if "a reasonable jury could return a

verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *Converse v. General Motors Corp.*, 893 F.2d 513, 514 (2d Cir.1990). If there is evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is inappropriate. *Rattner v. Netburn*, 930 F.2d 204, 209 (2d Cir. 1991).

The pertinent Policy provisions read as follows:

> This Policy insures ALL RISKS OF DIRECT PHYSICAL LOSS OR DAMAGE, except as hereinafter excluded, to property of the Insured as described herein and for the coverages designated in the Location Pages attached to this Policy, all while located on premises described on those Location Pages .... This Policy does not insure against loss or damage resulting from ... (4) faulty workmanship, material, construction or design; or errors in the development, processing, or manufacture of products; or work being performed upon property and directly attributable thereto; or malfunction; except ensuing loss from a peril not otherwise excluded by this Policy ....

Policy at Preamble and 2–3, Ex. A to Parash Aff.

■ To demonstrate its entitlement in the first instance to coverage for a loss under this all-risks policy, Plaintiff need merely "prove the existence of the policy and a fortuitous loss of the covered property." *Allied Van Lines v. Centennial Ins. Co.*, 685 F.Supp. 344, 345 (S.D.N.Y.1988). A loss is fortuitous unless it "results from an inherent defect, ordinary wear and tear, or intentional misconduct of the insured." *Ingersoll v. M/V Bodena*, 829 F.2d 293, 307 (2d Cir.1987). As the Policy is an all risk policy, the burden falls upon the insurer, Defendant, "to prove by a preponderance of the evidence that the loss occurred through a specifically excluded peril." *ABI Asset Corp. v. The Twin City Fire Ins. Co.*, No. 96 Civ.2067(AGS), 1997 WL 724568, at * 1 (S.D.N.Y., Nov.18, 1997), *citing Pan American World Airways v. Aetna Casualty & Surety Co.*, 505 F.2d 989, 999 (2d Cir.1974). Such "exclusions will be given the interpretation which is most beneficial to the insured." *Pan American*, 505 F.2d at 999. Where, as here, its legal position is based on an exclusion provision of the policy, the insurer bears the burden of demonstrating that its interpretation is the only reasonable one. *Pan American*, 505 F.2d at 999–1000.

■ To sustain its burden under this Policy, Defendant must prove that there was "faulty workmanship, material, construction or design" and that Plaintiff's loss "result[ed] from" the faulty condition. Material questions of fact are present with respect to both factors. Defendant attributes the loss to faulty design decisions in connection with the original construction of the building, arguing that the failure to design for the installation of soft joints and flashing constitutes a design defect within the scope of the exclusion. In support of this contention, Defendant cites PCA's March 9, 1999 report (authored by Roux) which identified three "primary factors" that caused or contributed to the failure of the brick facade: (1) missing, damaged and inadequate wall ties; (2) missing or improperly installed soft relieving joints; and (3) inadequate flashing design and installation. Roux Letter, dated March 9, 1999. Based on Roux's 1999 analysis, Defendant asserts that the claimed loss was the result of defects in the original workmanship, materials, construction and design of the Building's brick facade and that the loss, therefore, falls under the Policy's exclusion. Defendant also cites to a report issued by Rosenwasser/Grossman Consulting Engineers, Inc. ("Rosenwasser"), a

firm also retained by Plaintiff, which concludes that Rosenwasser's findings are "consistent with" PCA's 1998 findings. Rosenwasser Report dated December 2, 1998, Ex. 9 to Sade Aff. Plaintiff, however, cites testimony by Defendant's expert indicating that the building's design met applicable requirements at the time of the construction. Marschhausen EBT at 166–69, Ex. H to Parash Aff. There is a material fact issue as to whether the original design was faulty.

If relevant defects were proven, Defendant would then have the burden of proving that Plaintiff's loss resulted from those defects. Material issues of fact preclude summary judgment on this question as well. The question in this connection is whether the excluded peril was the proximate cause of the loss. *See Pan American*, 505 F.2d at 1006. New York courts give a narrow scope to the inquiry of proximate cause in this context. *Id.; Great Northern Ins. Co. v. Dayco Corp.*, 637 F.Supp. 765, 778 (1986). Thus, "the causation inquiry stops at the efficient physical cause of the loss; it does not trace events back to their metaphysical beginnings." *Pan American*, 505 F.2d at 1006 (rejecting arguments that politically-motivated hijacking came within war risk exclusion to all-risk policy). Yet, courts are not constrained "to settle upon the cause nearest the loss without regard to other factors." *Id.* New York courts determine causation by " 'follow[ing] the chain of causation so far, and so far only as the parties meant that [the Court] should follow it.' " *Album Realty v. American Home Assurance Co.*, 80 N.Y.2d 1008, 592 N.Y.S.2d 657, 607 N.E.2d 804 (1992) (quoting *Goldstein v. Standard Acc. Ins. Co.*, 236 N.Y. 178, 183, 140 N.E. 235 (1923)). Thus, "absent an explicit policy declaration of the parties' intention," the Court looks at "all the circumstances surrounding the loss, including whether a peril insured against came directly or indirectly within such proximity to the property insured that the damage it sustained fairly can be considered 'within the compass of reasonable probability.' " *Continental Ins. Co. v. Arkwright Mut. Ins. Co.*, 102 F.3d 30, 36 (1st Cir.1996) (quoting *Bird v. St. Paul Fire & Marine Ins. Co.*, 224 N.Y. 47, 120 N.E. 86 (1918) (Cardozo, J.)).

As noted above, Defendant contends that the loss resulted from defective design in the original construction of the building. Plaintiff contends, on the other hand, that water damage was the proximate cause, specifically that the physical and most direct cause of the damage was water infiltration, which caused thermal pressure, active facade movement, broken and snapped wall ties, and displaced steel shelf angles containing scaling rust. Roux Aff. ¶¶ 6–8, 12. Plaintiff proffers evidence of "deterioration of the brick facade" (Montefiore Hospital Letter to NYC Housing Development Corp., dated April 21, 1999, Ex. 5 to Sade Aff. II; *see also* Roux Deposition, pp. 45, 54–55, Ex. 2 to Sade Aff.), and how bulges, cracks and "creeps" contributed to the facade failure (Roux Deposition at 61–62; PCA Preliminary Building Facade Investigation at F, Ex. 3 to Sade Aff.; PCA Comprehensive Facade and Roof Evaluation at G, Ex. 3 to Sade Aff.). Plaintiff characterizes the result of these conditions as a "collapse" or "constructive collapse" of the facade, arguing that such a collapse is covered under the "all-risk" provision of the policy and that, even if there was some defect in the design, the water-related problems were the efficient physical proximate cause of the loss. Material issues of fact remain for trial as to the relationship among these potential causative factors and the loss.

Plaintiff also argues that, even if the collapse of the facade was due to faulty workmanship, construction, materials or design, the collapse is nonetheless a cov-

ered loss because it constitutes an "independent, sudden and fortuitous occurrence which, attenuated by time and other occurrences," fits within the "ensuing loss" exception to the Policy's exclusions. Mem. of Law in Supp. of Pl.'s Cross–Mot. at 10. In other words, Plaintiff contends that, if faulty workmanship or design may be deemed to have set in motion a chain of events that gradually contributed to the loss, because of intervening causes—water infiltration and excessive wall movement—the "ensuing loss" provision of the policy provides coverage for the loss. The cited Policy provision establishes an exception to the "faulty ... design" exclusion for "ensuing loss from a peril not otherwise excluded by this policy." Policy at 3, Ex. A to Parash Aff.

▆▆ Plaintiff's effort to obtain summary judgment holding applicable this exception to the exclusion fails. To accept Plaintiff's characterization as "ensuing loss" the collapse of a defectively designed facade would be to allow "the exclusion clause ... [to be] swallowed by the exception." *See Laquila Construction Inc. v. Travelers Indemnity Co. of Illinois*, 66 F.Supp.2d. 543, 545 (S.D.N.Y.1999) (clause excepting "physical damage resulting from faulty or defective workmanship a material" from policy provision excluding coverage for "[c]ost of making good faulty workmanship or material" did not reach costs of reinforcing building and removing and reinstalling other building components while defective concrete was replaced), *aff'd*, 2000 WL 730227 (2d Cir.2000). An ensuing loss provision does not cover loss caused by the excluded peril, but rather covers loss caused to other property wholly separate from the defective property itself. *See id.* at 545–46. Under New York law, Plaintiff would be entitled to coverage under an exception for ensuing loss only if and to the extent that it could prove that "collateral or subsequent" damage occurred to other insured property as

a result of the collapse. *See Narob Development Corp. v. Insurance Co. of North America*, 219 A.D.2d 454, 631 N.Y.S.2d 155 (1st Dep't 1995). Here, the claimed loss is the collapse of the very portion of the building that is claimed to have been designed defectively. There is no claim that the facade fell onto any other portion of the property or, indeed, of any other type of damage. The ensuing loss provision is thus inapplicable.

For the foregoing reasons, the summary judgment motions of Plaintiff and Defendant are denied in so far as they are directed to the Second Affirmative Defense.

*Timeliness of Notice of Claim*

Defendant asserts that Plaintiff breached its contractual obligation to provide Defendant with timely notice of loss as a matter of law, arguing that Plaintiff was made aware of the problem with the Building's brick facade as early as 1993, or at the very latest as of May 21, 1998, when PCA provided Plaintiff with a proposal for an "inspection of the building's facade" and an offered to "[i]nvestigate and evaluate methods to repair the various elements of the facade." Proposal at 2. Defendant asserts that, despite Plaintiff's knowledge of the condition of the brick facade and the steps that it took to address the problem, Plaintiff failed to notify Defendant of the damage and its claim until November 2, 1998, more than five months later.

Plaintiff argues that it did not have knowledge or information concerning PCA's data until months after the May 21, 1998 date. Plaintiff contends that, although Roux issued a detailed report dated August 24, 1998, regarding the conditions he observed on the roof and walls of the Building, the nature and magnitude of the loss were not realized until late September 1998, when Roux advised Plaintiff that emergency pinning was required to

restore the structural integrity of the entire facade of the building as he believed the facade had constructively collapsed and was in real danger of collapse. Elish Aff. ¶¶ 8–9; Roux Aff. ¶ 7–8; Letter from Roux to Peter Perdoncin, dated September 18, 1998, Ex. G to Parash Aff. According to Plaintiff, Roux's findings triggered an investigation by the Department of Housing and Urban Development ("HUD"), the mortgagee of the building, and the seeking of a second opinion. Elish Aff. ¶ 9. Plaintiff asserts that, pending the inspection and opinions of the engineers, Plaintiff notified the UJA on or about October 30, 1998, which in turn, notified Defendant on November 2, 1998. Cannavo Aff. ¶ 4. This conduct, Plaintiff asserts, was reasonable under the circumstances.

■ The relevant Policy provision reads as follows:

> The Insured shall give immediate written notice to the Company of any loss and, if the loss is due to a violation of the law, also to the police . . . .

Policy, Ex. A to Parash Aff. Under New York law, "[A]n insurer is not obligated to pay for the loss of its insured in the absence of timely notice in accordance with the terms of the policy." *Heydt Contracting Corp. v. American Home Assurance Co.*, 146 A.D.2d 497, 498, 536 N.Y.S.2d 770 (1st Dep't 1989). Prompt notice provisions "require[ ] that notice be give within a reasonable time under all the circumstances," and courts have adhered strictly to such provisions, "even for losses 'which appear insubstantial or which in the insured's estimation may not ultimately ripen into a claim.'" *Myers v. Cigna Property and Casualty Insurance Co.*, 953 F.Supp. 551, 556 (S.D.N.Y.1997) (citations omitted); *see also Eveready Insurance Co. v. Julius Chavis*, 150 A.D.2d 332, 333, 540 N.Y.S.2d 860 (2d Dep't 1989). Although "where there is no excuse for the delay and mitigating considerations are absent, the issue may be disposed of as a matter of law in advance of trial," here Plaintiff has come forward with affidavits proffering explanations and mitigating considerations for its delay in notifying Defendant of its loss. *Power Authority of the State of New York v. Westinghouse Elec. Corp.*, 117 A.D.2d 336, 339–40, 502 N.Y.S.2d 420 (1st Dep't 1986). There is therefore an issue of fact as to whether notice was given within a reasonable time under the circumstances.

The motions of Plaintiff and Defendant for summary judgment on timely notice grounds, relating to the Ninth Affirmative Defense, are therefore denied.

### Remainder of Plaintiff's Cross–Motion

Plaintiff also seeks summary judgment dismissing defendant's Third, Fourth, Fifth and Seventh Affirmative Defenses. These defenses are related, respectively, to the Policy's inherent vice exclusion; the role of bulging, shrinking and similar conditions in causation of the loss; whether the loss was fortuitous; and compliance with Policy provisions. As noted above, there are material issues of fact as to the cause of the loss. The various reports and affidavits include observations and information that could support each of these defenses. Plaintiff's motion is denied.

### CONCLUSION

For the reasons stated above, Defendant's motion to strike Gasperino's and Roux's Affidavits submitted in connection with this motion is denied. Defendant's motion for summary judgment and Plaintiff's cross-motion for partial summary judgment are denied.

The parties are directed to meet promptly with Judge Dolinger for settlement purposes. All discovery in this case shall be completed by October 28, 2002. A final pre-trial conference shall be held in this matter on January 31, 2002 at 11:00

a.m. Consultations and submissions shall be made in advance of the final pre-trial conference date, as set forth in the February 28, 2001 Pre–Trial Scheduling Order.

SO ORDERED.