Ewald v Erie Ins. Co. of N.Y. (2023 NY Slip Op 01439)

Ewald v Erie Ins. Co. of N.Y.

2023 NY Slip Op 01439

Decided on March 17, 2023

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on March 17, 2023
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: PERADOTTO, J.P., LINDLEY, BANNISTER, AND MONTOUR, JJ.

966 CA 22-00197

[*1]DANIEL EWALD AND REBECCA EWALD, PLAINTIFFS-APPELLANTS,
v
ERIE INSURANCE COMPANY OF NEW YORK, DEFENDANT-RESPONDENT. 

LYNN LAW FIRM LLP, SYRACUSE (KELSEY W. SHANNON OF COUNSEL), FOR PLAINTIFFS-APPELLANTS. 
RUPP BAASE PFALZGRAF CUNNINGHAM LLC, BUFFALO (MARCO CERCONE OF COUNSEL), FOR DEFENDANT-RESPONDENT. 

 Appeal from an order of the Supreme Court, Onondaga County (Donald A. Greenwood, J.), entered January 11, 2022. The order denied the motion of plaintiffs for partial summary judgment and granted the cross motion of defendant for summary judgment. 
It is hereby ORDERED that the order so appealed from is unanimously reversed on the law without costs, the cross motion is denied, the complaint is reinstated, the motion is granted, and judgment is granted in favor of plaintiffs as follows:
It is ADJUDGED and DECLARED that defendant is obligated to provide coverage to plaintiffs for the underlying claim.
Memorandum: Plaintiffs owned a two-story house covered by an all-risk homeowner's insurance policy issued by defendant. Plaintiffs hired contractors to perform a remodeling project of the bathroom in the owners' suite on the second floor, including construction of a walk-in shower. Toward the end of the multi-week job, the remodeling project was nearly finished inasmuch as the shower was complete and only finishing materials such as molding and lighting remained to be installed. The contractors stopped working one day in the late afternoon and plaintiffs, who were not sleeping in the owners' suite during the renovation and did not notice any issues with the bathroom that day or night, eventually went to sleep in other rooms in the house. When they awoke the following morning, however, plaintiffs observed significant amounts of water flowing and pooling throughout the entire house. Plaintiffs immediately shut off the water supply and then called a plumber, who opened the wall of the renovated shower in which the plumbing was enclosed and then capped a leak in the plumbing. The house sustained extensive water damage, and plaintiffs promptly reported the loss to defendant. A forensic inspection by an engineer retained by defendant later revealed that the water loss from the plumbing behind the sheetrock of the renovated shower was caused by a failure of a glued connection between different types of plumbing due to the contractors' use of incorrect solvent adhesion materials and methods.
As a result of its investigation, defendant denied plaintiffs' claim for coverage in its entirety based on several policy exclusions including, as relevant here, the faulty workmanship exclusion. Plaintiffs thereafter commenced this breach of contract and declaratory judgment action alleging, among other things, that defendant had breached the insurance contract because, contrary to defendant's denial of coverage, the ensuing loss exception to the faulty workmanship exclusion applied to provide coverage for the loss—defined as the massive water damage throughout the house—insofar as such damage constituted an ensuing loss. Supreme Court denied plaintiffs' motion for partial summary judgment on the issue of liability and granted defendant's cross motion for summary judgment dismissing the complaint. On appeal, plaintiffs [*2]contend that the court erred in denying their motion and granting defendant's cross motion because the water damage to their house is covered under the ensuing loss exception to the faulty workmanship exclusion in the policy. We agree, and we therefore reverse.
"In determining a dispute over insurance coverage, [courts] first look to the language of the policy" and, "[a]s with the construction of contracts generally, unambiguous provisions of an insurance contract must be given their plain and ordinary meaning, and the interpretation of such provisions is a question of law for the court" (Lend Lease [US] Constr. LMB Inc. v Zurich Am. Ins. Co., 28 NY3d 675, 681-682 [2017] [internal quotation marks omitted]). "Insurance contracts must be interpreted according to common speech and consistent with the reasonable expectations of the average insured" (Cragg v Allstate Indem. Corp., 17 NY3d 118, 122 [2011]) and "in a way that 'affords a fair meaning to all of the language employed by the parties in the contract and leaves no provision without force and effect' " (Consolidated Edison Co. of N.Y. v Allstate Ins. Co., 98 NY2d 208, 221-222 [2002]).
"[A]lthough the insurer has the burden of proving the applicability of an exclusion . . . , it is the insured's burden to establish the existence of coverage" (Platek v Town of Hamburg, 24 NY3d 688, 694 [2015]). "Thus, '[where] the existence of coverage depends entirely on the applicability of [an] exception to the exclusion, the insured has the duty of demonstrating that it has been satisfied' " (id.). The exception to the exclusion at issue here is "an ensuing loss provision, which 'provide[s] coverage when, as a result of an excluded peril, a covered peril arises and causes damage' " (id. at 695). "These provisions are a product of the San Francisco earthquake of 1906. In the wake of that natural disaster, some insurers argued that because earth movement was an excluded peril under property insurance policies, so was the damage caused by the devastating fires sparked by gas emitted from pipes broken by the shaking of the earth, even though fire was a covered peril. The California Legislature enacted statutes to prevent insurers from disclaiming coverage in the future under such circumstances. To comply with California law and similar statutes enacted by other states, insurers then added exceptions to their earthquake exclusions to preserve coverage for ensuing fires. Ensuing loss clauses were subsequently incorporated into other types of exclusions, for example, exclusions in all risks policies for faulty workmanship" (id.). "Thus, true to its historical origins and purpose, the ensuing loss exception preserve[s] coverage for insured losses, such as the fires after the San Francisco earthquake, and [does not] create a grant-back through which coverage may be had for the original excluded loss, whether it be an earthquake, a design defect, or any other excluded cause of loss" (id. [internal quotation marks omitted]).
Given the aforementioned, " '[w]here a property insurance policy contains an exclusion with an exception for ensuing loss, courts have sought to assure that the exception does not supersede the exclusion by disallowing coverage for ensuing loss directly related to the original excluded risk' " (id. at 694; see Narob Dev. Corp. v Insurance Co. of N. Am., 219 AD2d 454, 454 [1st Dept 1995], lv denied 87 NY2d 804 [1995]). For example, "where the policy excluded losses for faulty workmanship, [a] court rejected the insured's claim for the collapse of a defectively designed facade, explaining that '[a]n ensuing loss provision does not cover loss caused by the excluded peril, but rather covers loss caused to other property wholly separate from the defective property itself' " (Platek, 24 NY3d at 694, quoting Montefiore Med. Ctr. v American Protection Ins. Co., 226 F Supp 2d 470, 479 [SD NY 2002]). "Stated another way, an ensuing loss at least requires a new loss to property that is of a kind not excluded by the policy . . . ; it [does not] resurrect coverage for an excluded peril" (id. at 695 [internal quotation marks omitted]).
Conversely, an insured "would be entitled to coverage under an exception for ensuing loss . . . if and to the extent that [the insured] c[an] prove that 'collateral or subsequent' damage occurred to other insured property as a result of the [excluded peril]" (Montefiore Med. Ctr., 226 F Supp 2d at 479, quoting Narob Dev. Corp., 219 AD2d at 454). For example, where an all-risk policy excluded coverage for faulty workmanship and the insureds claimed coverage for damage to their home arising from a fire that was caused by improper conditions in an electrical junction box, the Second Department determined that the ensuing loss exception to the exclusion applied to provide coverage for the fire loss because "[t]he evidence in the record demonstrated that the fire occurred two years after the alleged faulty workmanship related to the junction box, and caused ensuing loss to property 'wholly separate from the defective property itself' " (Fruchthandler v Tri-State Consumer Ins. Co., 171 AD3d 706, 708 [2d Dept 2019]).
Here, plaintiffs established, and defendant does not dispute, that they sustained "direct physical loss to property insured under" the policy in the form of extensive water damage to their house for which defendant would be obligated to pay unless the loss was excluded elsewhere under the policy. Not only is any direct physical loss to property covered unless specifically excluded, the policy expressly provides that there is coverage for a "sudden and accidental" loss caused by water leakage from a plumbing system.
Defendant nonetheless denied plaintiffs' claim for coverage on the ground that it was not obligated to "pay for loss resulting directly or indirectly from" various exclusions, including the faulty workmanship exclusion for loss "caused by, resulting from, contributed to or aggravated by faulty or inadequate . . . design, development of specifications, workmanship, construction[, or] materials used in construction . . . of or related to property whether on or off the 'residence premises' by any person, group, organization, or governmental body." Defendant supported the denial with the forensic inspection report, which showed that the water leakage from the plumbing for the renovated shower was caused by a failure occurring in a glued connection between certain piping materials, namely, the contractors employed incorrect solvent adhesion materials and methods. In seeking to establish coverage, plaintiffs rely upon the ensuing loss exception to the faulty workmanship exclusion, which provides that "[a]ny ensuing loss not excluded is covered." Consequently, inasmuch as " 'the existence of coverage depends entirely on the applicability of [an] exception to the exclusion, [plaintiffs] ha[ve] the duty of demonstrating that it has been satisfied' " (Platek, 24 NY3d at 694). Plaintiffs have met that burden.
The record establishes that the contractors performed defective work on the plumbing system for the renovated shower by using an improper adhesion material on a pipe connection and enclosed that faulty pipe work in the wall of the bathroom at some unknown point during the two weeks prior to the leak. The plumbing connection subsequently failed, which resulted in the discharge of water from the plumbing that traveled throughout the house, causing extensive water damage. We conclude that the ensuing loss exception applies to provide coverage for the household water damage because the excluded peril of faulty workmanship resulted in "collateral or subsequent damage" (Narob Dev. Corp., 219 AD2d at 454) "to property 'wholly separate from the defective property itself' " (Fruchthandler, 171 AD3d at 708), and plaintiffs' claim is for "a new loss to property that is of a kind not excluded by the policy," i.e., sudden and accidental water leakage from within a plumbing system (Platek, 24 NY3d at 695 [internal quotation marks omitted]). In other words, the ensuing loss exception provides coverage here because, as a result of an excluded peril (faulty workmanship), a covered peril arose (water discharge from a plumbing system) and caused other harm (water damage) to separate property (areas throughout the house) (see generally id.).
Indeed, we conclude that the circumstances in Fruchthandler are functionally equivalent to the circumstances in the present case inasmuch as the excluded peril of faulty workmanship gave rise to defective property (junction box; plumbing), which subsequently resulted in conditions (electrical fire; discharged water) that caused the claimed damage to property (the respective houses) other than the subject of the faulty work. Defendant's attempt to distinguish Fruchthandler is unavailing. The language of the exception here does not include a requirement that the excluded faulty workmanship and the ensuing loss be separated by any specific amount of time, and there was no such requirement noted in Fruchthandler either. Not only would a specific temporal requirement be atextual, there would be no principled manner to determine whether an adequate amount of time had passed for the claimed damage to constitute an ensuing loss. In our view, the better reading of Fruchthandler is that the Second Department simply used the fact that the fire occurred two years after the improper work, which was particular to that case, to emphasize that the claimed loss (fire damage to the house), which was covered under the all-risk policy, was wholly separate from the defect in the property that was created by the faulty workmanship (junction box), which was excluded from coverage (see Fruchthandler, 171 AD3d at 706-707).
We also reject defendant's assertion and the court's conclusion that plaintiffs are attempting to resurrect coverage for an excluded peril. To the contrary, as plaintiffs correctly contend, they are not attempting to resurrect coverage for an excluded peril because sudden and accidental leakage of water from a plumbing system is a covered peril under the all-risk policy, and they are not seeking coverage for the cost of correcting the faulty workmanship, i.e., repair of [*3]the plumbing defect itself. In that regard, we agree with plaintiffs that "[t]his case is distinguishable from those cases [relied upon by defendant] where the insured sought coverage under an ensuing loss exception for the cost of correcting the faulty or defective workmanship" (id. at 708; cf. Platek, 24 NY3d at 695-697; Copacabana Realty, LLC v Fireman's Fund Ins. Co., 2013 NY Slip Op 30960[U], *1-5 [Sup Ct, Suffolk County 2013], affd 130 AD3d 771 [2d Dept 2015], lv denied 26 NY3d 911 [2015]; Broome County v Travelers Indem. Co., 125 AD3d 1241, 1244-1245 [3d Dept 2015], lv denied 25 NY3d 908 [2015]; Narob Dev. Corp., 219 AD2d at 454). Here, by contrast, plaintiffs seek coverage not for fixing or repairing the plumbing, but rather for the extensive damage that ensued elsewhere throughout the house as a result of the discharge of water from the previously installed and enclosed plumbing system of the renovated shower.
We have considered the remaining assertions of defendant regarding the purported inapplicability of the ensuing loss exception and conclude that they are without merit. Based on the foregoing, we conclude that plaintiffs' claim for water damage to their house is covered under the ensuing loss exception to the faulty workmanship exclusion in the policy. In light of our determination, plaintiffs' procedural challenges to defendant's cross motion are academic.
Entered: March 17, 2023
Ann Dillon Flynn
Clerk of the Court