==================================================================
This opinion is uncorrected and subject to revision before
publication in the New York Reports.
------------------------------------------------------------------
No. 21
Frederick J. Platek, et al.,
          Respondents,
        v.
Town of Hamberg, et al.,
          Defendants,
Allstate Indemnity Company,
          Appellant.


                Robert H. King, Jr., for appellant.
                Patrick J. Mackey, for respondents.




READ, J.:

        On September 7, 2010, a subsurface water main abutting

the property of plaintiffs Frederick J. and Mary E. Platek

ruptured, causing water to flood into and severely damage their

home's finished basement.  Plaintiffs immediately made a claim

under their homeowners' insurance policy, which was issued by

defendant Allstate Indemnity Company (Allstate).  The insuring

agreement excludes property damage caused by water, with an

- 1 -

exception for certain sudden and accidental direct physical losses; specifically, the section entitled "Losses We Do Not Cover under Coverages A [Dwelling[1] Protection] and B [Other Structures Protection]" provides as follows:

> "[Allstate does] not cover loss to the property . . . <u>consisting of or caused by</u>:
>
>> 1.  Flood . . .
>>
>> 2.  Water . . . that backs up through sewers or drains.
>>
>> 3.  Water . . . that overflows from a sump pump, sump pump well or other system designed for the removal of subsurface water . . .
>>
>> 4.  Water . . . <u>on or below the surface of the ground, regardless of its source</u>[, including] water . . . <u>which exerts pressure on, or flows, seeps or leaks through any part of the residence premises</u>."[2]
>
> We do cover sudden and accidental direct physical loss <u>caused by fire, explosion or theft resulting from items 1 through 4 listed above</u>" (emphases added).

On September 9, 2010, Allstate disclaimed coverage, based on item 4 of the policy's water loss exclusion.  For the reasons that follow, we conclude that the policy's unambiguous language excludes the water damage to plaintiffs' home from

---

[1]The policy defines "Dwelling" as "a one, two, three or four family building structure, identified as the insured property on the Policy Declarations, where [the policyholder] reside[s] and which is principally used as a private residence."

[2]The policy defines "Residence Premises" as "the dwelling, other structures and land located at the address stated on the Policy Declarations."

coverage, and the exception does not nullify the water loss exclusion or render it ambiguous.

I.

Plaintiffs commenced this action by summons and complaint dated and filed on November 23, 2010. They alleged that Allstate had improperly disclaimed coverage, causing them to suffer damages in excess of $100,000.[3] Then on March 11, 2011, plaintiffs moved for summary judgment on their breach-of-contract claim, asking Supreme Court to declare that the policy covered their loss and to direct Allstate to pay their claim. Plaintiffs asserted that because they had "sustained a water intrusion loss" caused by "an explosion of the . . . water main," their claim fell within the exception to the water loss exclusion.

In support of their motion, plaintiffs submitted the affidavit of an engineer, who stated that the water main "suddenly exploded from the internal water pressure being exerted on the pipe walls. Hence, the explosion resulted from internally pressurized water that was supposed to be contained in a buried underground pipe." He opined that plaintiffs had therefore suffered "direct physical loss to their home and other property," which was "caused by an explosion resulting from internally pressurized water suddenly and accidentally bursting from the underground pipe."

---

[3]Plaintiffs also sued the Town of Hamburg and the Erie County Water Authority, attributing the water main's rupture to their negligence.

By notice of motion dated April 7, 2011, Allstate opposed plaintiffs' motion and cross-moved for summary judgment to dismiss the complaint against it on the ground that the policy did not cover plaintiffs' claim, as a matter of law.  Quoting the water loss exclusion, Allstate pointed out that the policy excludes property losses "consisting of or caused by . . . 4. Water . . . on or below the surface of the ground, regardless of its source[, including] water . . . which exerts pressure on, or flows, seeps or leaks through any part of the residence premises."  Allstate added that the exception did not apply because, under that provision's wording, any "loss caused by . . . explosion" must "result[] from" the explosion.  Here, by contrast, any explosion "occurred earlier, outside the residence premises, when the water main broke."

By order granted May 6 and filed May 12, 2011, Supreme Court granted plaintiffs' motion and denied Allstate's cross motion, and declared that plaintiffs' loss was covered under the policy and Allstate was required to pay the claim.  Allstate appealed, and on July 6, 2012, the Appellate Division, with two Justices dissenting in part, modified Supreme Court's order by vacating the declaration and otherwise affirmed (97 AD3d 1118 [4th Dept 2012]).  All the Justices agreed that, since plaintiffs asserted a cause of action against Allstate for breach of contract, Supreme Court erred by "declaring" that plaintiffs' claimed loss was covered under the policy and directing payment.

The court split on the issue of whether the policy's sudden and accidental exception to the water loss exclusion applied.

With respect to the exception, the majority explained that

> "Allstate characterizes [it] as an 'ensuing loss' provision, and . . . thus interprets [it] to provide that any initial loss to the insured's property caused by the conditions set forth in item 4, i.e., '[w]ater . . . on or below the surface of the ground,' is not covered under the policy but that, in the event that there is an 'explosion . . . resulting from' that initial loss, any secondary or ensuing loss caused by the explosion is covered.  Plaintiffs disagree that there must be a secondary or ensuing loss, and they assert that the exception applies because there was an 'explosion [of the water main] resulting from' the conditions set forth in item 4, i.e., '[w]ater . . . below the surface of the ground,' and causing 'sudden and accidental direct physical loss' to their property" (id. at 1120).

Concluding that both interpretations were reasonable, the majority held that the policy was therefore ambiguous and should be construed in favor of plaintiffs, the insureds.

The dissenting Justices observed that plaintiffs, not Allstate, bore the burden of demonstrating the applicability of the exception, and reasoned that, in any event, the policy's language was not ambiguous.  In their view,

> "interpreting the exception to cover a loss where an explosion is caused by water outside the residence . . . contravenes the purpose of the water loss exclusion, which is to preclude coverage for losses caused by water entry into the residence.  Rather, the language 'resulting from' is properly

interpreted as referring to an 'ensuing loss,' i.e. a loss that follows or takes place after an excluded event.  In other words, the exception refers to a separate occurrence -- fire, explosion or theft -- that results from the water damage to the residence, and does not refer to the water damage itself.  For example, a fire or explosion triggered by water damage to a circuit breaker or appliance, or a theft that occurs in an empty house rendered uninhabitable by water damage" (id. at 1123-1124 [internal citations omitted]).

Plaintiffs and Allstate subsequently entered into a stipulation whereby the parties agreed that plaintiffs' damages totaled $110,000.  Allstate now appeals pursuant to CPLR 5601 (d) from the resulting judgment granted on January 13 and entered on January 14, 2014.

II.

Three basic principles guide our analysis.  First, "[i]n determining a dispute over insurance coverage, we first look to the language of the policy" (Consolidated Edison Co. of N.Y. v Allstate Ins. Co., 98 NY2d 208, 221 [2002]).  Concomitantly, we "construe the policy in a way that affords a fair meaning to all of the language employed by the parties in the contract and leaves no provision without force and effect" (id. at 221-222 [internal quotation marks omitted] [emphasis added]).

Second, although the insurer has the burden of proving the applicability of an exclusion (see Seaboard Sur. Co. v Gillette Co., 64 NY2d 304, 311 [1984]), it is the insured's

burden to establish the existence of coverage (see Lavine v
Indemnity Ins. Co., 260 NY 399, 410 [1933]).  Thus, "[where] the
existence of coverage depends entirely on the applicability of
[an] exception to the exclusion, the insured has the duty of
demonstrating that it has been satisfied" (Borg-Warner Corp. v
Insurance Co. of N. Am., 174 AD2d 24, 31 [3d Dept 1992], lv
denied 80 NY2d 753 [1992]; see also Northville Indus. Corp. v
National Union Fire Ins. Co. of Pittsburgh, Pa., 89 NY2d 621, 634
[1997]).

And finally, "[w]here a property insurance policy
contains an exclusion with an exception for ensuing loss, courts
have sought to assure that the exception does not supersede the
exclusion by disallowing coverage for ensuing loss directly
related to the original excluded risk" (Narob Dev. Corp. v
Insurance Co. of N. Am., 219 AD2d 454, 454 [1st Dept 1995], lv
denied 87 NY2d 804 [1995]; see also ITT Indus. v Factory Mut.
Ins. Co., 303 AD2d 177, 177 [1st Dept 2003] [rejecting
plaintiff's "untenable interpretation that the policy provided
coverage for a resulting loss of an excluded risk"]; Montefiore
Medical Center v American Protection Ins. Co., 226 F Supp 2d 470,
479 [SD NY 2002] [where the policy excluded losses for faulty
workmanship, the court rejected the insured's claim for the
collapse of a defectively designed facade, explaining that "[a]n
ensuing loss provision does not cover loss caused by the excluded
peril, but rather covers loss caused to other property wholly

separate from the defective property itself"]).

In this case, plaintiffs' loss occurred when water from a burst water main flowed onto their property, flooding the basement of their home.  Accordingly, their loss clearly falls within item 4 of the water loss exclusion, which bars coverage for "loss to the property . . . consisting of or caused by . . . 4.  Water . . . on or below the surface of the ground, regardless of its source . . .[, including] water . . . which exerts pressure on, or flows, seeps or leaks through any part of the residence premises" (see Neuman v United Servs. Auto. Assn., 74 AD3d 925, 926 [2d Dept 2010] [similarly-worded water loss exclusion precludes coverage for water damage to basement]; Harleysville Ins. Co. of N.Y. v Potamianos Props., LLC, 108 AD3d 1110, 1111-1112 [4th Dept 2013] [accord]).

Turning next to the sudden and accidental exception, this clause is properly characterized as an ensuing loss provision, which "provide[s] coverage when, as a result of an excluded peril, a covered peril arises and causes damage" (Ostrager & Newman, Insurance Coverage Disputes § 21.04 [h] at 1721 [17th ed 2015]).  These provisions are a product of the San Francisco earthquake of 1906.  In the wake of that natural disaster, some insurers argued that because earth movement was an excluded peril under property insurance policies, so was the damage caused by the devastating fires sparked by gas emitted from pipes broken by the shaking of the earth, even though fire

was a covered peril.  The California legislature enacted statutes to prevent insurers from disclaiming coverage in the future under such circumstances.  To comply with California law and similar statutes enacted by other states, insurers then added exceptions to their earthquake exclusions to preserve coverage for ensuing fires.  Ensuing loss clauses were subsequently incorporated into other types of exclusions; for example, exclusions in all-risks policies for faulty workmanship (see generally James S. Harrington, "Lessons of the San Francisco Earthquake of 1906: Understanding Ensuing Loss in Property Insurance," 37 The Brief, Summer 2008; Insurance Glossary of Insurance and Risk Management Terms, "ensuing loss clause," http://www.irmi.com/online/insurance-glossary/terms/e/ensuing-loss-clause.aspx).  Thus, true to its historical origins and purpose, the ensuing loss exception

> "preserve[s] coverage for insured losses, such as the fires after the San Francisco earthquake, and [does not] create a 'grant-back' through which coverage may be had for the original excluded loss, whether it be an earthquake, a design defect, or any other excluded cause of loss" (Harrington, supra, at 32).

Stated another way, an ensuing loss "at least requires a new loss to property that is of a kind not excluded by the policy" (id. at 31); it "[does not] resurrect coverage for an excluded peril" (id. at 34).

Plaintiffs nonetheless argue that the water damage to their basement was covered because it was "caused by an explosion

of the . . . water main <u>resulting from</u> highly pressurized <u>water located on or below the surface of the ground</u>," or, as stated slightly differently elsewhere in their brief, that "the explosion occurred as a result of water that was exerting pressure on the Property" or "the Residence."  But this is not what plaintiffs' expert said.  He opined that "highly pressurized water" exerted internal water pressure on the walls of a pipe buried off plaintiffs' property; not that an explosion resulted from subsurface water "exert[ing] pressure on . . . any part of the residence premises" per item 4 of the water loss exclusion.

Additionally, plaintiffs ignore the water loss exclusion's prefatory language, which specifies that "[Allstate does] not cover <u>loss to the property</u> . . . <u>consisting of or caused by</u>: [any of the four items of water loss]" [emphases added]).  This phrase is an integral part of each of the four items, and makes the sentence complete.  Reading the policy as a whole, then, the exception would trigger coverage for any sudden and accidental direct physical loss caused by an explosion resulting from a loss to the property consisting of or caused by water on or below the surface of the ground of the residence premises, regardless of its source.  As already noted, this does not describe what happened here according to plaintiffs' own expert.

Further, it is unimportant that Allstate did not label the exception an "ensuing loss provision," or use "ensuing from"

instead of "resulting from" in the policy as "[t]hese clauses are common in all-risk policies, and while rarely identical they share more similarities than differences" (<u>Fiess v State Farm Lloyds</u>, 202 SW3d 744, 752 [Tex 2006] [noting that a majority of jurisdictions, including New York, refuse to interpret an ensuing loss provision to make an excluded loss reappear as a covered loss] [<u>id.</u> at 752-753]).  Indeed, the phrases "ensuing loss" or "resulting loss" have been used interchangeably to mean a loss that follows chronologically or occurs after an excluded event (<u>see</u> <u>Narob Dev. Corp.</u>, 219 AD2d at 454; <u>TMW Enterprises, Inc. v Federal Ins. Co.</u>, 619 F3d 574, 579 [6th Cir 2010]; <u>see</u> <u>also</u> Paul T. Sullivan, Jeffrey A. Gordon, "A Review of Ensuing Loss Case Law: 2010 to Present," 43 The Brief, Spring 2014).

Finally, plaintiffs take the position that even if "resulting from" does mean "follows," it is not "irrational" for it also to mean "caused by."  The sudden and accidental exception to the water loss exclusion, however, uses the phrase "caused by" earlier when referring to "loss <u>caused by</u> . . . explosion" (emphasis added).  The exception then uses a different phrase -- i.e., "<u>resulting from</u> items 1 through 4" (emphasis added).  The use of different terms in the same agreement (here, in the same sentence) implies that they are to be afforded different meanings (<u>see</u> <u>Frank B. Hall & Co. of N.Y. v Orient Overseas Assoc.</u>, 48 NY2d 958, 959 [1979]; <u>NFL Enters. LLC v Comcast Cable Communications, LLC</u>, 51 AD3d 52, 60-61 [1st Dept 2008]).

In sum, interpreting the insurance policy as plaintiffs propose would contravene the water loss exclusion's purpose, as expressed in unambiguous language, which is to preclude coverage for damages caused by the entry of water onto an insured's property.  As stated by the Supreme Court of New Hampshire when interpreting a policy excluding water loss, "[t]o apply the ensuing loss provision to provide coverage for what is essentially a flood would subvert the intent of the parties" (Bates v Phenix Mut. Fire Ins. Co., 156 NH 719, 723, 943 A2d 750, 754 [2008] [internal quotation marks omitted]).  In the same way, permitting coverage under the facts of this case would force Allstate to insure a loss it did not contemplate and, indeed, affirmatively excluded.

Accordingly, the judgment appealed from and the order of the Appellate Division brought up for review should be reversed, with costs; plaintiffs' motion for summary judgment denied; and Allstate's cross motion for summary judgment granted.

Platek v Allstate Indemnity, et al.

No. 21

PIGOTT, J. (concurring):

I agree with my colleagues that the exception to the water loss exclusion in the Allstate policy does not provide coverage for plaintiffs' loss. I disagree, however, that the loss "clearly falls within item 4 of the water loss exclusion" (majority opn. at 7).

The homeowner's insurance policy at issue is an "all risk" policy, which covers "sudden and accidental direct and physical loss to the property" unless specifically excluded (see Parks Real Estate Purchasing Group v St. Paul Fire and Marine Ins. Co., 472 F.3d 33, 41 [2d Cir 2006]).  There is little doubt that the policy at issue would, in the normal course, cover direct and physical loss from an "explosion".

On plaintiffs' motion for summary judgment, the only testimony with respect to what occurred in this case was plaintiffs' expert opining that plaintiffs suffered direct water loss from an "explosion" of a water pipe (see generally Goldner v Otsego Mut. Fire Ins. Co., 39 AD2d 440, 442 [1972]).  Allstate proffered no evidence to dispute this evidence.

Because plaintiffs' argument to the court was predicated on the exception to the water loss exclusion of the policy, however, the courts did not address this primary coverage issue.  I therefore concur with the result in this case.

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

Judgment appealed from and order of the Appellate Division brought up for review reversed, with costs, plaintiffs' motion for summary judgment denied and defendant Allstate Indemnity Company's motion for summary judgment granted.  Opinion by Judge Read.  Chief Judge Lippman and Judges Rivera and Abdus-Salaam concur.  Judge Pigott concurs in result in a separate opinion. Judges Stein and Fahey took no part.

Decided February 19, 2015