[30 NYS3d 60]

St. George Tower and Grill Owners Corp., Appellant, v Insurance Company of Greater New York, Respondent.

First Department, April 21, 2016

## APPEARANCES OF COUNSEL

*Montgomery McCracken Walker & Rhoads LLP*, New York City (*Charles Palella* and *Rimma Tsvasman* of counsel), for appellants.

*Gartner & Bloom P.C.*, New York City (*Susan P. Mahon* and *Kenneth A. Bloom* of counsel), for respondent.

## OPINION OF THE COURT

SAXE, J.

This appeal raises the issue of what is and is not covered by a property insurance policy's "Blanket Ordinance or Law Coverage Endorsement." Plaintiff cooperative corporation, the owner of the subject building located on Hicks Street in Brooklyn Heights, relies on such an endorsement in asking that its insurer be required to pay for the cost of certain structural repairs that are necessary to bring the building into compliance with the Building Code, because the need for those repairs was uncovered in the course of performing water damage remediation covered by the policy. We conclude that under circumstances such as those presented here, where it is fortuitously discovered in the course of performing remediation of covered property damage, that structural repairs or modifications are needed in order to bring the building into compliance with applicable codes, the "Ordinance or Law" endorsement is not brought into play.

Facts

Plaintiff St. George Tower and Grill Owners Corp. is a cooperative apartment corporation and owner of the building located at 101-121 Hicks Street, Brooklyn, New York. Defendant Insurance Company of Greater New York (GNY) issued a commercial package policy insuring plaintiff's building for the policy period commencing October 20, 2009 through October 19, 2010.

On May 26, 2010, pressure testing of a pump related to the building's fire suppression system resulted in a flood that damaged the ceilings and floors in certain apartments on the upper floors. GNY did not dispute that the damage to the floors and ceilings caused by the flood was a covered loss under the policy, and reimbursed plaintiff for water damage and lost maintenance incurred as a result of that covered loss.

The flooding of the building caused mold to develop within some units, which made it necessary to remove internal finishes in those areas. During the course of remediation, an architect retained by St. George inspected various apartments on the 24th through 28th floors, and filed an application for a permit to perform the work to repair the damage caused by the flood, pursuant to Directive 14 of the New York City Department of Buildings. Under Directive 14, the building's architect or engineer stands in the position of a DOB inspector: "Where any work is found not in compliance with plans or not in compliance with applicable laws, it shall be corrected and if not corrected, the department shall be notified by the architect or engineer and a violation requiring elimination of the defective work shall be filed." During the architect's inspection and repair, it was discovered that the concrete slabs under the flooring were in a distressed and deteriorated condition, including some open cracks and penetrations through the slabs. This condition of the concrete slabs constituted a violation of the New York City Building Code (Administrative Code of City of NY §§ 27-597, 27-345), and required repair before the water damage remediation could be completed. It was stipulated that the condition of the concrete slabs was not caused by the flooding.

On or about December 15, 2010, St. George notified GNY of the need to remediate the concrete slabs, and in January 2011, GNY hired an engineering firm, WJE Engineers & Architects, P.C., to perform a physical inspection of the concrete floor slabs. The firm issued a report dated February 4, 2011 asserting that the observed distress to the concrete slabs predated the flooding of the apartments on May 26, 2010, and was

> "primarily due to very poor original construction practices and from subsequent renovation work to place or abandon plumbing lines. Additionally, some spalling of the concrete encasement around steel beams may have been the result of improper installation of the concrete and long term corrosion of

underlying steel due to moisture and humidity in the building."

After GNY rejected the claim for the costs of repairing the concrete slabs, plaintiff brought this declaratory judgment action, asserting a cause of action for breach of contract based on GNY's failure to provide coverage, and seeking attorney's fees. GNY's pre-answer motion to dismiss the attorney's fees claim was granted. The parties subsequently moved and cross-moved for summary judgment on the breach of contract claim. The motion court granted GNY's motion and dismissed the complaint, holding that under the policy GNY is not obligated to reimburse plaintiff for the cost of repairing the concrete slabs. For the reasons that follow, we affirm.

Discussion

The "Blanket Ordinance or Law Coverage Endorsement" at issue here provides coverage in the event the building "sustains direct physical damage that is covered under this policy and *such damage results in* the enforcement of the ordinance or law" (emphasis added). Another provision of the endorsement, covering "Increased Cost of Construction," applies when an insured building sustains covered direct physical damage, and "when the increased cost [of construction] *is a consequence of* enforcement of the minimum requirements of the ordinance or law" (emphasis added). Plaintiff reasons that the covered water damage remediation resulted in the enforcement of the Building Code regarding the condition of the concrete slabs, and that the cost of the extra work needed to repair the concrete slabs was a consequence of enforcement of the Building Code. In other words, the need to comply with the Building Code resulted from the performance of covered remediation.

The motion court based its decision on its view that a causal link was necessary between the direct physical damage that is covered and the enforcement of the ordinance or law. It held that since the covered loss—the water damage—did not cause the need to repair the deterioration of the concrete slabs, the water damage to the ceilings and floors in plaintiff's building could not be said to have "result[ed] in" the enforcement of the Building Code to correct damage to the concrete slabs underlying the flooring. Rather, the damage to the concrete slabs predated the water damage and seemed to have been the result of, among other things, faulty construction and renovation.

Plaintiff argues that situations such as the one presented here are the very purpose of a "Law or Ordinance" endorse-

ment. It reasons that since the endorsement is a modification of the standard policy, for which the insured pays an increased premium to cover the extra cost, and since the "Increased Cost of Construction Coverage" provision covers "the increased cost to . . . reconstruct or remodel *undamaged* portions of that building . . . when the increased cost is a consequence of enforcement of the minimum requirements of the ordinance or law," the endorsement must necessarily extend coverage beyond damage proximately caused by the insured peril, to include any resulting increased cost arising due to the enforcement of an ordinance or law affecting an undamaged portion of the building. Plaintiff argues that the motion court in effect imported into the policy's endorsement a requirement not present in the policy, namely, that the need to enforce the ordinance or law must be a proximate cause of the covered damage.

Exactly the same GNY policy provisions were at issue in *DEB Assoc. v Greater New York Mut. Ins. Co.* (407 NJ Super 287, 970 A2d 1074 [App Div 2009], *cert denied* 200 NJ 473, 983 A2d 199 [2009]). There, a windstorm caused damage to the brick façade, concrete block perimeter wall, and windows on the north side of the seventh floor of an eight story office building. An inspection of the building by municipal officials revealed that the walls were secured to the concrete flooring using mortar, rather than steel angle irons, and that this code violation was present throughout the building; indeed, it was determined that the walls were no longer securely attached to the building. The building was therefore deemed unsafe, and it was ordered that the building be vacated until it could be brought up to current code standards.

In considering the increased cost of construction policy provision, the New Jersey Appellate Division stated:

> "We need not decide here the precise outer reaches of coverage under the clause at issue. . . . [T]his was not a case in which the local inspector happened to be in the building because of the wall collapse and fortuitously discovered one or more unrelated code problems. There was a direct connection between the covered damage and the additional work required to the building. . . .
>
> "[T]he prior nonconforming condition was considered legally acceptable before the disaster occurred. But after one wall collapsed, the condition of the

other walls was reasonably perceived as posing a danger to human life and safety. . . . It was the wall collapse that proximately caused the authorities to specifically look for similar problems elsewhere in the building and to designate the building as an 'unsafe structure' when they found them. Further, the required upgrades concerned the same structural part of the building (the walls), the same building code provision, and the same type of repair (installation of angle irons)" (407 NJ Super at 300-301, 970 A2d at 1082-1083).

So, while it explicitly declined to address the type of factual situation presented here, the Court in *DEB Associates* concluded that the Ordinance or Law endorsement covered the cost of replacing the mortar with steel angle irons throughout the building, because there was a direct connection between the covered damage and the additional required work.

*City of Elmira v Selective Ins. Co. of N.Y.* (83 AD3d 1262 [3d Dept 2011]), a case on which St. George relies, is similar to *DEB Associates*. There, a three-story historic building sustained damage when a portion of the southern wall collapsed during a windstorm (*id.*). A post-collapse investigation revealed the collapse was caused by hidden deterioration of mortar, a condition which existed in other walls, which resulted in the building being found to be in violation of several sections of the New York State Property Maintenance Code, which required all of the deteriorated mortars to be repaired or the building to be demolished (*id.* at 1262-1263). The Third Department found that coverage was triggered based on the provision of the plaintiff's insurance policy that provided coverage for certain losses resulting from the enforcement of any "ordinance or law," reasoning that the subject ordinance or law provision contained no requirement that the windstorm itself be the direct cause of the enforcement of a law or ordinance, only that the resulting damage trigger the enforcement (*id.* at 1264). The Third Department found that the defendant insurer could have included language in the policy if it wished to limit its coverage to only those situations where the enforcement of an ordinance or law was directly caused by a covered cause of loss, such as a windstorm, yet did not do so (*id.*).

However, the ordinance at issue in *Elmira* was triggered by mortar conditions throughout the building that led to the collapse of the wall; as in *DEB Associates*, there was a direct con-

nection between the covered loss and the enforcement of the applicable law or ordinance.

Here, in contrast to those situations, the latent problem that was uncovered by inspection necessitated by the covered damage was not a problem related to the covered damage; rather, the inspection discovered a latent, unrelated problem with the building's infrastructure. The condition of the concrete slabs in plaintiff's building, which had to be repaired to bring the building into compliance with the Building Code, bore no relationship to the covered loss—the water damage—in the way that the collapsed wall in *DEB Associates* was related to the code violation and the resultant requirement that the mortar be replaced with steel angle irons.

This distinction leads us to the opposite result from that reached in *DEB Associates*. The Ordinance or Law endorsement cannot be triggered simply by the discovery, in the course of an inspection necessitated by a covered event, of structural problems that amount to code violations. That is so whether the discovered condition could have been discerned earlier (*see e.g. 61 Jane St. Tenants Corp. v Great Am. Ins. Co.*, 2001 WL 40774, 2001 US Dist LEXIS 265 [SD NY 2001]), or where, as here, it could not have been discovered absent the covered damage.

If the rule were otherwise, even an inspector's discovery of code violations resulting from shoddy original construction, such as beams or pipes made of sub-par materials, would leave the insurance company liable for the necessary replacement of those materials any time the problem happened to be uncovered in the course of damage remediation. We therefore agree with the motion court; there must be some direct connection between the covered damage and the enforcement of the ordinance, and the necessity of a relationship between the damage and the code enforcement work is not satisfied by the fact that the covered work cannot be completed until the code-compliant repairs are performed. On this record, no evidence was presented that the code-compliant repairs resulted from, or were even related to, the water damage.

We are aware of decisions of other jurisdictions holding to the contrary, and decline to adopt their reasoning (*see e.g. Davidson Hotel Co. v St. Paul Fire & Mar. Ins. Co.*, 136 F Supp 2d 901, 910-911 [WD Tenn 2001]). In our view, it is not sufficient that the chain of events beginning with the covered event led to the inspection that uncovered otherwise unrelated code violations.

Finally, while our affirmance of the award of summary judgment to defendant conclusively establishes the propriety of the dismissal of plaintiff's attorney's fees claim, we note that in any event, plaintiff's allegations that defendant's denial of coverage was not in good faith were insufficient to entitle plaintiff to reimbursement of its attorney's fees (*see Sukup v State of New York*, 19 NY2d 519, 522 [1967]).

Accordingly, the judgment of the Supreme Court, New York County (Melvin L. Schweitzer, J.), entered March 27, 2015, inter alia, declaring that defendant is not obligated to reimburse plaintiff for the cost of repairing certain concrete floor slabs, and bringing up for review the orders of the same court and Justice, entered June 3, 2014, and February 20, 2013, which granted defendant's motions, respectively, for a declaratory judgment and to dismiss the claim for attorney fees, should be affirmed, without costs. The appeal from the June 3, 2014 order should be dismissed, without costs, as subsumed in the appeal from the judgment.

MOSKOWITZ, RICHTER and FEINMAN, JJ., concur.

Judgment, Supreme Court, New York County, entered March 27, 2015, affirmed, without costs. Appeal from order, same court and Justice, entered June 3, 2014, dismissed, without costs, as subsumed in the appeal from the judgment.