15-2358-cv
*Nat'l Railroad Passenger Corp. v. Aspen Specialty Ins. Co. et al.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## CORRECTED SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 7th day of September, two thousand sixteen.

PRESENT:
> GERARD E. LYNCH,
> SUSAN L. CARNEY,
> > *Circuit Judges,*
> ALVIN K. HELLERSTEIN,
> > *District Judge.*\*

_____

NATIONAL RAILROAD PASSENGER
CORP.,

> *Appellant*,

> v.                                             No. 15-2358-cv

ASPEN SPECIALTY INSURANCE CO.,
COMMONWEALTH INSURANCE CO.,
LEXINGTON INSURANCE CO.,
MAIDEN SPECIALTY INSURANCE CO.,
PARTNER REINSURANCE EUROPE, PLC,
RSUI INDEMNITY CO., STEADFAST
INSURANCE CO., TORUS SPECIALTY
INSURANCE CO., WESTPORT INSURANCE
CORP., CERTAIN UNDERWRITERS AT LLOYD'S

\* The Honorable Alvin K. Hellerstein of the United States District Court for the Southern District of New York, sitting by designation.

OF LONDON, CERTAIN LONDON MARKET
INSURANCE COMPANIES SUBSCRIBING
TO POLICY NOS. 507/N11NA08242, 507/N11NA08244,
507/N11NA08244, 507/N11NA08245, and
GEP 2944,

*Defendants-Appellees*,

ARCH SPECIALTY INSURANCE CO.,
FEDERAL INSURANCE CO., LIBERTY
MUTUAL FIRE INSURANCE CO.,
MAXUM INDEMNITY CO., NAVIGATORS
INSURANCE CO., CERTAIN UNDERWRITERS
AT LLOYD'S OF LONDON SUBSCRIBING TO
POLICY NOS. 507/N11NA08240 and 507/N11NA08241,
SCOR GLOBAL P&C,

*Defendants.\*\**

———————————————————

FOR APPELLANT:

PAUL SMITH, Jenner & Block, LLP,
Washington, DC (Rhonda D. Orin,
Daniel J. Healy, Marshall Gilinsky,
Anderson Kill, LLP, Washington, DC;
Jessica Ring Amunson, Matthew L.
Jacobs, Joshua M. Parker, Jenner &
Block LLP, Washington, DC; Caroline
M. DeCell, Jenner & Block, LLP, New
York, NY, *on the brief*).

FOR APPELLEES Partner Reinsurance
Europe, PLC, Torus Specialty Insurance
Co., Westport Insurance Corp., and Certain
Underwriters at Lloyd's of London and
Certain London Market Insurance
Companies subscribing to Policy Nos.
507/N11NA08242, 507/N11NA08244,
507/N11NA08244, and GEP 2944:

DOUGLAS HALLWARD-
DRIEMEIER, Ropes & Gray LLP,
Washington, DC (Matthew M. Burke,
Ropes & Gray LLP, Boston, MA, *on the
brief*).

———————————————————

\*\*The Clerk of Court is directed to amend the official caption to conform to the caption
above.

FOR APPELLEES Aspen Specialty Insurance Co., Commonwealth Insurance Co., Certain Underwriters at Lloyd's of London and Certain Market Companies subscribing to Policy No. 507/N11NA08245, Lexington Insurance Co., Maiden Specialty Insurance Co., RSUI Indemnity Co., and Steadfast Insurance Co.:

COSTANTINO SURIANO, Mound Cotton Wollan & Greengrass LLP, New York, NY.

Appeal from the United States District Court for the Southern District of New York (Jed S. Rakoff, *Judge*).

**UPON DUE CONSIDERATION IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED** in part and **VACATED** and **REMANDED** in part.

The National Railroad Passenger Corporation ("Amtrak") sought all $675 million of available coverage from its insurers for damage that occurred following Superstorm Sandy in October 2012. A major portion of the claim stemmed from the flooding of two of Amtrak's tunnels under the East and Hudson Rivers in New York City by seawater, causing extensive damage. The district court granted summary judgment for Amtrak's insurers on three issues, holding that: (1) the damage caused by an inundation of water in the tunnels was subject to the policies' $125 million flood sublimit; (2) the corrosion of Amtrak's equipment after Amtrak pumped out the seawater was not an "ensuing loss" and therefore was also subject to the flood sublimit; and (3) Amtrak had not shown it was entitled to coverage under the Demolition and Increased Cost of Construction ("DICC")

3

clause in its insurance policies. Amtrak appealed. We assume the parties' familiarity with the underlying facts and procedural history of this case, as well as the issues on appeal.[1]

## I.  The Policies' Definitions of "Flood"

The district court held that the damage resulting from water inundation in Amtrak's tunnels was a "flood" within the three different definitions of the term that are in Amtrak's insurance policies, and that Amtrak's claims based on that damage were thus subject to the $125 million flood sublimit. The first definition of "flood," which appears in the majority of the relevant policies, is: "a rising and overflowing of a body of water onto normally dry land." J.A. 1647. The second definition, found in a minority of the policies, provides that a flood is:

> [A] temporary condition of partial or complete inundation of normally dry land from
> (1) the overflow of inland or tidal waters outside the normal watercourse or natural boundaries
> (2) the overflow, release, rising, back-up, runoff or surge of surface water; or
> (3) [t]he unusual or rapid accumulation or runoff of surface water from any sour[ce].

J.A. 406, 459. The third definition, which appears in only one policy is: "surface water, flood waters, waves, tide or tidal waters, sea surge, tsunami, the release of water, the rising, overflowing or breaking of defenses of natural or manmade bodies of water, or

---

[1] "We review a district court's grant of summary judgment *de novo*, and will affirm only when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *In re 650 Fifth Ave. & Related Properties*, ---F.3d---, 2016 WL 3913403, at *10 (2d Cir. July 20, 2016), quoting Fed. R. Civ. P. 56(a).

4

wind driven water, regardless of any other cause or [e]vent contributing concurrently or in any other sequence of loss." J.A. 1127. Amtrak concedes that the Sandy damage falls within the third definition of flood because the definition explicitly includes "sea surge" and "wind driven water," but argues that in the absence of those words, the wind-driven tidal surge caused by Sandy does not fall within the other definitions.

The inundation of sea water resulting from Sandy's storm surge is a "flood" within the meaning of all three of these definitions. "Language in an insurance contract will be deemed ambiguous if reasonable minds could differ as to its meaning." *Fed. Ins. Co. v. Am. Home Assur. Co.*, 639 F.3d 557, 567 (2d Cir. 2011) (internal quotation marks omitted). "Flood" as that term is used in the policies is not ambiguous under this standard, and thus we assign it "[its] plain and ordinary meaning . . . without the aid of extrinsic evidence." *Id.* (internal quotation marks omitted). The mere fact that there are three different definitions of "flood" does not render the term ambiguous. *See Ali v. Fed. Ins. Co.*, 719 F.3d 83, 93 n.17 (2d Cir. 2013) ("[T]he fact that one contract is even clearer than another does not make the other contract ambiguous."); *A. Gugliotta Dev., Inc. v. First Am. Title Ins. Co. of New York*, 976 N.Y.S.2d 172, 175 (2d Dep't 2013) (noting that a "lack of specificity does not render the policy provisions ambiguous" simply because "the policy could have theoretically been more precise"). The first two definitions of "flood" are sufficiently broad to include an inundation of seawater driven by storm surge or a wind storm under their plain meaning, and the third definition explicitly includes "sea

5

surge" and "wind driven water" in its definition of flood. Thus, the damage in Amtrak's tunnels is subject to the $125 million flood sublimit, and we affirm the district court's grant of summary judgment for the insurers on this issue.

## II.    The "Ensuing Loss" Clause

The ensuing loss clause of Amtrak's policy provides that: "Even if the peril of flood . . . is the predominant cause of loss or damage, any ensuing loss or damage not otherwise excluded herein shall not be subject to any sublimits." J.A. 260. "[W]here a property insurance policy contains an exclusion with an exception for ensuing loss, courts have sought to assure that the exception does not supersede the exclusion by disallowing coverage for ensuing loss directly related to the original excluded [or sublimited] risk." *Platek v. Town of Hamburg*, 24 N.Y.3d 688, 694 (2015). Thus, "an ensuing loss provision . . . provides coverage when, as a result of an excluded peril, a covered peril arises and causes damage." *Id.* at 695 (internal quotation marks omitted). The clause "does not create a grant-back through which coverage may be had for the original excluded loss," and "does not resurrect coverage for an excluded peril." *Id.* In general, therefore, courts should not allow coverage "for [an] ensuing loss directly related to the original excluded risk." *Narob Dev. Corp. v. Ins. Co. of N. Am.*, 631 N.Y.S.2d 155, 155-56 (1st Dep't 1995).

Corrosion of the metal components in Amtrak's tunnels was a large source of its damages after Sandy. Amtrak contends that the corrosion of its metal equipment was

6

caused by a "chloride attack" arising from the combination of seawater residue with oxygen in the air, and thus is an "ensuing loss" that is not subject to the flood sublimit. In support of this argument, Amtrak claims that the "chloride attack" is a covered peril separate from the flood because the accelerated corrosion began only *after* Amtrak pumped the seawater out of the tunnels, meaning that the corrosion is not contemporaneous with the flood.[2] Amtrak's proposed interpretation of the ensuing loss clause is so broad, however, that it "would contravene the [flood sublimit's] purpose, as expressed in unambiguous language." *Platek*, 24 N.Y.3d at 697. The corrosion of Amtrak's metal equipment cannot meaningfully be separated from water damage that is plainly subject to the flood sublimit, nor can it be attributed to a distinct "covered peril," *id.* at 695, arising from the original, sublimited peril (the flood). Thus, accepting Amtrak's version of the facts, the corrosion resulting from the "chloride attack" after the flood is not an "ensuing loss." Damage due to that corrosion is therefore also subject to the $125 million flood sublimit, and the district court's ruling is affirmed.

## III. The DICC Clause

The DICC clause in Amtrak's insurance policy provides in relevant part:

> In the event of loss or damage under this policy that causes the enforcement of any law, ordinance, governmental directive or standard regulating the construction, repair, use, or occupancy of property, this Company shall be liable for:

---

[2] The insurers accept Amtrak's view of these facts for purposes of summary judgment.

7

> (1) the cost of demolishing the undamaged property including the cost of clearing the site;
>
> (2) the proportion that the value of the undamaged part of the property bore to the value of the entire property prior to loss;
>
> (3) increased cost of repair or reconstruction of the damaged and undamaged property on the same or another site, limited to the cost that would have been incurred in order to comply with the minimum requirements of such law or ordinance regulating the repair or reconstruction of the damaged property on the same site . . . .

J.A. 272.[3] The DICC clause has a $125 million sublimit. J.A. 260. Amtrak makes two separate arguments with respect to the DICC clause: (1) that the district court erred in granting summary judgment for the insurers because it found that Amtrak could not claim DICC coverage for replacing undamaged portions of the tunnels; and (2) that the DICC clause's own $125 million sublimit may be "stacked" on top of the flood sublimit.

The district court erred when it prematurely granted summary judgment for the insurers on the DICC clause issue. The insurers moved for summary judgment and sought a declaration that portal-to-portal replacement of the tunnels' undamaged bench walls was not covered under the DICC clause. In granting the insurers' motion, the district court held that the flood had not caused the enforcement of any law and that Amtrak had not shown that such enforcement was likely in the future. Amtrak contends that, since it has not yet submitted its repair plans to the Federal Railroad Administration ("FRA"), it does not yet know what changes to undamaged portions of the bench walls the FRA may require it to make. Moreover, Amtrak points to regulations accompanying the Americans

---

[3] Such clauses are relatively common in property insurance policies such as Amtrak's. *See St. George Tower v. Ins. Co. of Greater New York*, 30 N.Y.S.3d 60, 62-64 (1st Dep't 2016).

with Disabilities Act ("ADA") that it argues will mandate certain repairs to undamaged portions of the tunnels. *See* 49 C.F.R. § 37.43(a)(1). Assuming, as the district court did, that the FRA has the power to regulate Amtrak, granting summary judgment in the insurers' favor was premature. The DICC clause does not have a time limit, and a directive from the FRA or a requirement of the ADA may obligate Amtrak to make changes to undamaged portions of the tunnels in the future. In the event that the FRA does require Amtrak to replace undamaged portions of its tunnels – and a covered peril caused the FRA to issue such a directive – Amtrak should be able to file a claim with its insurers seeking DICC coverage. Thus, we vacate the district court's ruling with respect to the DICC clause.[4]

The excess insurers – the only insurers who are parties to this appeal – contend that Amtrak's stacking argument is waived because it was not properly raised at the district court.[5] *See Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 408 (2d Cir. 2014). Amtrak has not waived that argument, however, because it mentioned the DICC

---

[4] In so holding, we express no view about whether Amtrak's future claim for coverage under the DICC clause will be successful. Amtrak has not yet shown that it is entitled to coverage under the DICC clause, and does not contend that summary judgment should be awarded in its favor at this time. As of this writing, no FRA directive or other law has required it to demolish and replace undamaged property. Thus, the district court's ruling was correct that Amtrak is not entitled to coverage *as of now*. We vacate the DICC clause ruling to the extent that it grants summary judgment with prejudice and prevents Amtrak from seeking DICC coverage at a later date when the issue is ripe.

[5] Whether the DICC's $125 million sublimit may be stacked on top of the flood sublimit is important to the excess insurers because they are responsible for paying only claims that exceed $125 million, which is the extent of the primary layer and the amount of the flood sublimit.

9

clause's separate $125 million sublimit in its summary judgment briefs at the district court. The issue was not fully briefed at the district court or during this appeal, however, and the district court did not decide whether the DICC's $125 million sublimit may be stacked on top of the flood sublimit. We therefore decline to decide the stacking issue because the district court should decide it in the first instance on remand. *See United Food & Commercial Workers Union, Local 919, AFL-CIO v. CenterMark Properties Meriden Square, Inc.*, 30 F.3d 298, 307 (2d Cir. 1994).

We have considered all of Amtrak's and the appellees' remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court in all respects, except that the district court's ruling on the DICC clause is **VACATED** and the case is **REMANDED** for further proceedings consistent with this decision.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

10