17-3396-cv
*Madelaine Chocolate Novelties, Inc. v. Great N. Ins. Co.*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect.  Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1.  When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order").  A party citing a summary order must serve a copy of it on any party not represented by counsel.**

**At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 23rd day of October, two thousand eighteen.**

PRESENT:  JOSÉ A. CABRANES,
          BARRINGTON D. PARKER,
                    *Circuit Judges,*
          KIYO A. MATSUMOTO,
                    *District Judge.**

—————————————————————

MADELAINE CHOCOLATE NOVELTIES, INC. D/B/A THE MADELAINE CHOCOLATE COMPANY,

    *Plaintiff-Appellant,*

    v.                         17-3396-cv

GREAT NORTHERN INSURANCE COMPANY,

    *Defendant-Appellee.*

—————————————————————

**FOR PLAINTIFF-APPELLANT:**        EDWARD M. JOYCE (Jason B. Lissy and James M. Gross, *on the brief*), Jones Day, New York, NY.

---

\* Judge Kiyo A. Matsumoto, of the United States District Court for the Eastern District of New York, sitting by designation.

**FOR DEFENDANT-APPELLEE:** JONATHAN D. HACKER, O'Melveny & Myers LLP, Washington, DC (Jennifer B. Sokoler, O'Melveny & Myers LLP, New York, NY, and Thomas McKay, III and Melissa F. Brill, Cozen O' Connor, New York, NY, *on the brief*).

Appeal from a judgment of the United States District Court for the Eastern District of New York (Raymond J. Dearie, *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the September 27, 2017 judgment of the District Court is **VACATED** and **REMANDED**.

Plaintiff-Appellant Madelaine Chocolate Novelties, Inc. ("Madelaine Chocolate") appeals a judgment of the District Court granting summary judgment to Defendant-Appellee Great Northern Insurance Company ("Great Northern").

## BACKGROUND

In 2012, Madelaine Chocolate suffered significant damage to its business due to storm surges caused by Hurricane Sandy. A storm surge is a phenomenon "produced by water being pushed toward the shore *by the force of the winds.*" *Madelaine Chocolate Novelties, Inc. v. Great N. Ins. Co.*, No. 15-CV-5830(RJD)(SMG)(GRB), 2017 WL 2954630, at *7 (E.D.N.Y. June 30, 2017) [hereinafter Magistrate R&R] (emphasis added). Madelaine Chocolate, having purchased an "all-risks" insurance policy (the "Policy") from Great Northern, filed a timely proof of loss for property damage of approximately $40 million and business income loss and extra operational expenses of $13.5 million. Great Northern refused to pay most of the claimed amount, reasoning that storm surge damage was excluded from coverage under the Policy.

The Policy states that Great Northern will pay for damage or direct physical loss to a "building; or personal property, caused by or resulting from a peril not otherwise excluded." J.A. 166. The Policy also states that Great Northern "will pay for the actual: business income loss . . . [and] extra [operational] expense[s] . . . caused by or result[ing] from direct physical loss or damage by a **covered peril** to property, unless otherwise stated." J.A. 195 (emphasis in original). It is undisputed that, for purposes of the Policy, a "windstorm" is a covered peril. J.A. 264, 149, 184, 271; Oral Arg. at 11:13–11:19. However, the Policy's main forms do not expressly define "windstorm." Instead, the Policy contains an endorsement (the "Windstorm Endorsement"), which defines the term "windstorm" for the entire Policy. The Windstorm Endorsement provides, in relevant part:

Under Definitions, the following is added:

**Windstorm** means:

2

- wind;
- wind-driven rain;
- erosion of soil or other land caused by or resulting from wind or wind driven rain;
- hail; or
- collapse of a building or other structure caused by or resulting from wind,

regardless of any other cause or event that directly or indirectly:
- contributes concurrently to; or
- contributed in any sequence to,

the loss or damage, even if such other cause or event would otherwise be covered.

**Windstorm** does not mean:
- frost;
- cold weather;
- snow; or
- sleet or ice (other than hail),

whether driven by wind or not.

J.A. 321 (emphasis in original).

The Windstorm Endorsement contains its own anti-concurrent causation ("ACC") clause. *Id.* ("**Windstorm** means: wind . . . *regardless of any other cause or event that directly or indirectly: contributes concurrently to; or contributed in any sequence to, the loss or damage . . . .*" (second emphasis added)). Madelaine Chocolate interprets the Windstorm Endorsement—in particular, its ACC clause—to encompass losses caused by storm surge, a wind-driven peril. Nevertheless, Great Northern denied coverage to Madelaine Chocolate based on the Policy's flood exclusion provision (the "Flood Exclusion"), which states:

This insurance does not apply to loss or damage caused by or resulting from:
- waves, tidal water or tidal waves; or
- rising, overflowing or breaking of any boundary,

of any natural or man-made lakes, reservoirs, ponds, brooks, rivers, streams, harbors, oceans or any other body of water or watercourse, whether driven by wind or not, regardless of any other cause or event that directly or indirectly:
- contributes concurrently to; or
- contributes in any sequence to,

the loss or damage, even if such other cause or event would otherwise be covered.

This Flood exclusion does not apply to ensuing loss or damage caused by or resulting from a **specified peril**.

J.A. 182 (emphasis in original).

3

The parties dispute whether storm surge damage is excluded from coverage under the Flood Exclusion in light of the Windstorm Endorsement's ACC clause. Judge Dearie, adopting the report and recommendation of Magistrate Judge Gary R. Brown, granted summary judgment to Great Northern, reasoning that the Flood Exclusion unambiguously excluded storm surge damage from coverage under the Policy.

DISCUSSION

"Because interpretation of an insurance agreement is a question of law," this Court must "review the district court's construction . . . *de novo.*" *U.S. Fid. & Guar. Co. v. Fendi Adele S.R.L.*, 823 F.3d 146, 149 (2d Cir. 2016) (emphasis added). When interpreting insurance policies under New York law, the burden is on the insurer to set forth applicable exclusions of coverage "in *clear and unmistakable language.* . . . [Exclusions] are not to be extended by interpretation or implication, but are to be accorded a *strict and narrow construction.*" *Ins. Co. of Greater N.Y. v. Clermont Armory, LLC*, 923 N.Y.S.2d 661, 663 (N.Y. App. Div. 2011) (emphasis added) (quoting *Seaboard Sur. Co. v. Gillette Co.*, 476 N.E.2d 272, 275 (N.Y. 1984)).

"Ambiguity in a contract arises when the contract, read as a whole, fails to disclose its purpose and the parties' intent . . . or where its terms are subject to more than one reasonable interpretation." *Universal Am. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 37 N.E.3d 78, 80 (N.Y. 2015) (internal quotation marks omitted). Ambiguities in coverage exclusions are resolved in favor of the insured. *See, e.g.*, *Belt Painting Corp. v. TIG Ins. Co.*, 795 N.E.2d 15, 17 (N.Y. 2003); *Birnbaum v. Jamestown Mut. Ins. Co.*, 83 N.E.2d 128, 131 (N.Y. 1948).

After reviewing the record, we vacate the District Court's judgment and remand for further proceedings consistent with this order. The District Court determined that the Policy unambiguously excluded damage caused by storm surges. *Madelaine Chocolate Novelties v. Great N. Ins. Co.*, No. 15-CV-5830(RJD)(SMG)(GRB), 2017 WL 4280550, at *1 (E.D.N.Y. Sept. 26, 2017) [hereinafter District Court Opinion]. Its reasoning proceeded in two parts. First, the District Court cited two non-precedential opinions from this Circuit categorizing storm surges as "floods" under similar insurance policies. *See Nat'l R.R. Passenger Corp. v. Aspen Specialty Ins. Co.*, 661 F. App'x 10, 13 (2d Cir. 2016); *New Sea Crest Health Care Ctr., LLC v. Lexington Ins. Co.*, No. 12-CV-6414(RJD)(RLM), 2014 WL 2879839, at *3 (E.D.N.Y. June 24, 2014). These cases are inapposite because the insurance policies analyzed therein did not involve endorsements that explicitly added to the definition of a covered peril. Here, by contrast, the Windstorm Endorsement adds an ACC clause to the definition of a covered peril for the entire Policy.

Second, the District Court relied on cases from the Fifth Circuit (the "Katrina Cases") interpreting similar endorsements as merely "shift[ing] some of the insurer's [covered] risk . . . to the insured . . . by setting a limit on the value of the covered losses below which the insurer is not obligated to pay." District Court Opinion at *2 (quoting *Penthouse Owners Association, Inc. v. Certain Underwriters*

4

*at Lloyds, London*, 612 F.3d 383, 387 (5th Cir. 2010)); *see also* Magistrate R&R at \*10 (citing cases). However, there are multiple reasons why the Windstorm Endorsement in this case is distinguishable from the endorsements analyzed in the Katrina Cases. *See* Appellant's Br. Ex. B. Mainly, the Windstorm Endorsement contains a separate "Definitions" section that explicitly adds an ACC clause to the definition of "windstorm" for the entire Policy, J.A. 321; *see also* Appellant's Br. Ex. A, a feature that Great Northern does not dispute, Oral Arg. at 10:09–10:11, 16:08–16:16 ("It's added to the Definitions section, which applies to the whole Policy."). Because none of the Katrina Cases involved policies with this specific feature, they are of limited relevance to this case. For this reason, the District Court erred by analogizing the Windstorm Endorsement to the hurricane deductible endorsements in the Katrina Cases without further analyzing the function of an ACC clause when added to the definition of a covered peril for the entire Policy.

On remand, the District Court must assess whether the Windstorm Endorsement's ACC clause conflicts with, or otherwise creates an ambiguity *vis-à-vis*, the Policy's Flood Exclusion. In so doing, the District Court may consider permitting discovery into interpretive materials relating to the Windstorm Endorsement and its relationship to the Policy's coverage provisions. Further, in making this determination, the District Court should continue to be mindful of well-established precedents requiring exclusions to be set out in "clear and unmistakable language" and to be accorded a "strict and narrow construction." *Clermont Armory*, 84 A.D.3d at 1170. Any ambiguities in the Policy must be construed in favor of the insured. *See, e.g.*, *Belt Painting Corp.*, 795 N.E.2d 15, 17; *Birnbaum*, 83 N.E.2d 128, 131.

For the foregoing reasons, we **VACATE** the judgment of the District Court and **REMAND** for further proceedings consistent with this summary order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

5